## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| HAROLD VAN ADAMS, an individual,, <br><br> Plaintiff, <br> v. <br><br> WELLS FARGO HOME MORTGAGE, a wholly owned subsidiary of WELLS FARGO BANK, NATIONAL ASSOCIATION,, <br><br> Defendant. | **MEMORANDUM DECISION AND ORDER** <br><br> Case No. 2:15-cv-183-BCW <br><br> Magistrate Judge Brooke Wells |

The parties have consented to having United States Magistrate Judge Brooke C. Wells conduct all proceedings in this case, including entry of final judgment, with appeal to the United States Court of Appeals for the Tenth Circuit.[1]  Before the Court is Defendant Wells Fargo Home Mortgage, a wholly owned subsidiary of Wells Fargo Bank, N.A.'s (hereinafter referred to as "Wells Fargo") Motion to Dismiss[2] and Plaintiff's Motion to Strike Defendants' Motion to Dismiss.[3]

On September 17, 2015, the Court heard oral argument on these motions.  At oral argument, Plaintiff was represented by Mr. Judson Pitts and Wells Fargo was represented by Mr. Richard Shelton.   At the conclusion of oral argument, the Court took the motions under advisement and ordered the parties to submit supplemental briefing.[4]  The parties have submitted their supplemental briefs and the Court has reviewed and considered the same.  Now being fully informed, the Court issues the following Memorandum Decision and Order.

[1] Docket no. 11.

[2] Docket no. 17.

[3] Docket no. 18.

[4] Docket no. 26.

## BACKGROUND

In 2014, Wells Fargo foreclosed on Plaintiff's home in Eden, Utah.  The legality of this foreclosure is the basis of this lawsuit.  Plaintiff asserts that Wells Fargo unlawfully foreclosed Plaintiff's property in violation of Utah's foreclosure statutes and Wells Fargo has negligently maintained the property following the foreclosure which has resulted in damage to the property. Plaintiff's Amended Complaint contains the following causes of action:  (1) Unlawful Foreclosure and (2) Negligence.  Wells Fargo has moved to dismiss Plaintiff's Amended Complaint and Plaintiff has moved to Strike Wells Fargo's Motion to Dismiss.

In 2007, Plaintiff received a negative amortization re-finance from Wells Fargo's predecessor-in-interest, Wachovia Bank in the principal amount of $475,000 for the purchase of property located at 5293 E. Elkhorn Circle, Eden, Utah.  Plaintiff executed a Deed of Trust in connection with the Loan.   Plaintiff defaulted on the loan in 2012.   He hired counsel, and together made an application for a loan modification, or for any other mortgage relief that Plaintiff could qualify for with Wells Fargo.  As part of the application, Wells Fargo asked Plaintiff to complete a formal application to be considered for mortgage relief, which included a request for K-1 income statements from all partnerships; tax returns for all entities with which Adams was affiliated; a hardship statement, etc…Wells Fargo designated its employee Lindsay McElroy to be Plaintiff's single point of contact for this application. On December 2, 2013, Adams was informed via letter that he had been denied mortgage relief assistance as he did not meet the requirements because according to Wells Fargo, Plaintiff demonstrated sufficient income to make the contractual payments due on the loan.

Wells Fargo and Plaintiff argued over the materiality of alleged income Plaintiff received from a K1 partnership.  Adams appealed the earlier decision and was again denied relief.  He

then contacted Ms. McElroy about filing a new application for mortgage relief based upon his resignation from the partnership.  Adams sent a Letter of Explanation on December 15, 2013 to Wells Fargo.  This letter provided an income statement that more truly reflected Plaintiff's actual income and net worth.   According to Plaintiff's Amended Complaint, "[t]hroughout January and February, 2014, Adams continued to market his property for sale, and build and supplement his new application file with the assistance of his legal counsel.  The new modification was sent to Lindsay in late February, 2014 through Christensen, Young  & Associates, PLLC."[5]  "Adams faced multiple foreclosure dates prior to December, 2013; the sale was postponed each time while he negotiated foreclosure relief."[6]

Plaintiff then received notice from Lindsay that a final sale date had been set for April 3, 2014.  According to the Amended Complaint, Adams received a letter from Lindsay and Wells Fargo dated March 27, 2014, that reminded Adams of the April 3, 2014 sale of the property and "informed Adams that there was not enough time to review his loan for mortgage assistance (presumably under the new application)."  Wells Fargo then proceeded with the April 3, 2014 foreclosure sale and Wells Fargo was the highest bidder.  On April 8, 2014 Adams received a letter from Wells Fargo which stated that the property had been foreclosed.  The letter set forth four options Plaintiff could exercise in the wake of the foreclosure sale, none of which applied to Adams except a "relocation assistance" offer.  Adams vacated the property some months later.  "After taking possession of the Property, Wells Fargo-on information and belief-hired various property management companies and/or sub-contractors to take care of the Property, including winterization of the home."[7]  However, the home wasn't property taken care of and Plaintiff

---

[5] Compl. at ¶ 20.

[6] *Id.* at ¶ 22.

[7] *Id*. at  ¶ 31.

alleges that extensive damage has occurred to the property including broken pipes and removal of the kitchen's marble flooring.  "Mr. Adams is emotionally distraught at what is happening to his home under the care of Wells Fargo."[8]

## ANALYSIS

### A.  **Motion to Strike**

Plaintiff moves to strike Wells Fargo's Motion to Dismiss because Plaintiff argues Wells Fargo improperly introduced documents "that were not contained in the Plaintiff's Amended Complaint."[9] As a result, Plaintiff argues that Wells Fargo's motion is not a proper motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

"Generally, a court considers only the contents of the complaint when ruling on a 12(b)(6) motion."[10]  The U.S. Supreme Court has recognized the following exceptions to the general rule:  "documents incorporated by reference in the complaint; documents referred to in and central to the complaint, when no party disputes its authenticity; and 'matters of which a court may take judicial notice.'"[11] Further, the 10th Circuit has explained:

> if a plaintiff does not incorporate by reference or attach a document to its complaint, but the document is referred to in the complaint and is central to the plaintiff's claim, a defendant may submit an indisputably authentic copy to the court to be considered on a motion to dismiss.[12]

Wells Fargo argues that each of the eleven exhibits submitted in relation to its Motion to Dismiss fits into one of the exceptions enumerated above.  Wells Fargo in a footnote to their Opposition Memorandum asserts that "Plaintiff does not dispute the authenticity of any of the

---

[8] *Id*. at ¶ 35.

[9] Docket no. 21.

[10] *Berneike v. CitiMortgage, Inc.*, 708 F.3d 1141, 1146 (10th Cir. 2013)(citing *Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010).

[11] *Id*. (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S.C 308, 322 (2007).

[12] *Id*. (quoting *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997).

documents attached to the Motion to Dismiss."[13] At oral argument however, counsel for Plaintiff did raise the issue as to authenticity because Wells Fargo did not submit any authenticating document such as a declaration of affidavit from a records custodian to support the submission of the documents attached to the Motion to Dismiss.  However, counsel for Plaintiff made clear that even if the Court finds that the documents are authentic, they are not fatal to Plaintiff's claims and if the Court found the documents to be helpful in considering the Motion to Dismiss the Court *may* strike them but is not required to do so.

Generally, Rule 803(6) of the Federal Rules of Civil Procedure permits the authentication of a business record by the "custodian" of the record or any "other qualified witness."  The rule states:

> Ordinarily, the custodian or other qualified witness will testify in court that it was the "regular practice" of the business to make and keep the business record. Alternatively, the plaintiff can certify the document under Rule 902(1)…which require[s] the plaintiff to introduce...a "written declaration" by the custodian or other qualified persons that the record:
> (A) was made at or near the time of the occurrence of the matters set forth by, or from information transmitted by, a person with knowledge of those matters;
> (B) was kept in the course of the regularly conducted activity; and
> (C) was made by the regularly conducted activity as a regular practice.[14]

Here, under the Federal Rules of Evidence, the Court finds Wells Fargo should have submitted some sort of authenticating document to verify the authentication of the documents submitted.  However, the Court will not find the lack of authentication fatal to Wells Fargo's Motion to Dismiss in this case because the Court agrees with Plaintiff's arguments that the Court

---

[13] Docket no. 21 fn. 1.

[14] *Proctor & Gamble C. v. Haugen*, No. 1:95-cv-94-TS, 2007 WL 773887 (D. Utah Mar. 6, 2007)(unpublished)(citing *Thanongsigh v. Board of Educ.*, 462 F.3d 762, 777 (7th Cir. 2006)(quoting *United States v. Jenkins*, 345 F.3d 928, 935 (6th Cir. 2003)(internal quotation marks and citations omitted).

is not required to strike the pleading.[15]  Accordingly, the Court finds the exhibits attached and

referenced in Wells Fargo's Motion to Dismiss are properly before the Court but strongly

cautions counsel that they are to adhere to authentication rules in the future.  Therefore, the Court

will not convert this motion into a motion for summary judgment, and will examine the motion

to dismiss under the standards set forth in Rule 12(b)(6) of the Federal Rules of Civil Procedure.

B. **Motion to Dismiss**

a. **Legal Standard**

In considering a motion to dismiss under Rule 12(b)(6), all well-pleaded factual

allegations, as distinguished from conclusory allegations, are accepted as true and viewed in the

light most favorable to the non-moving party.[16]  Plaintiff must provide "enough facts to state a

claim to relief that is plausible on its face."[17]  In essence, a plaintiff must offer sufficient factual

allegations to "raise a right to relief above the speculative level."[18]  However, the court "need not

accept conclusory allegations without supporting factual averments."[19]  Thus, "[t]he court's

function on a Rule 12(b)(6) motion is not to weigh potential evidence that the party might

present at trial, but assess whether the plaintiff's complaint alone is legally sufficient to state a

claim for which relief may be granted."[20]  "Therefore, in assessing a motion to dismiss, a court

should disregard conclusory statements of law, even if they are couched as facts, and then

consider whether the remaining specific factual allegations, if presumed to be true, plausibly

---

[15] The Court does find it interesting that the March 27, 2014 letter referenced by Plaintiff in the Amended Complaint at paragraph 25 that was allegedly sent by Wells Fargo's point of contact to Plaintiff and is central to Plaintiff's claims is noticeably absent from the documents submitted by Wells Fargo with its Motion to Dismiss.

[16] *Ruiz v. McDonnell*, 299 F.3d 1173, 1181 (10th Cir. 2002).

[17] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007).

[18] *Id*. at 555.

[19] *Southern Disposal, Inc., v. Texas Waste*, 161 F.3d 1259, 1262 (10th Cir. 1998).

[20] *Miller v. Glanz*, 948 F.2d 1562, 1565 (10th Cir. 1991).

provide a claim that the defendant is liable."[21]  "Thus, the mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims."[22]

### b.  Unlawful Foreclosure

Plaintiff's main contention in this lawsuit is that Wells Fargo scheduled a sale of Plaintiff's home while simultaneously negotiating foreclosure relief with him.  Specifically, Plaintiff brings various statutory notice claims against Wells Fargo.  The Court will examine each in turn.

### 1.  Utah Code Ann. § 57-1-24.3(2)

Paragraph 39 of the Amended Complaint alleges, "[o]n information and belief, Wells Fargo Home Mortgage failed to comply with Utah Code Ann. 57-1-24.3(2) generally, with regard to both applications."  Utah Code Ann. 57-1-24.3(2) states:

> (a) Before a notice of default is filed for record under Section 57-1-24, a beneficiary or servicer shall:
> (i) designate a single point of contact; and (ii) send written notice to the default trustor at the default trustor's current address or, if none is provided, the address of the property described in the trust deed.

Here, the documents submitted by Wells Fargo in relation to their Motion to Dismiss, demonstrate that that Wells Fargo designated a single point of contact and written notices were sent to Plaintiff.  Plaintiff seems to concede this point in the Opposition Memorandum when he states.  "If the documents are authentic, and show that there was both a single point of contact, and written notice provided, then Wells Fargo should win on the merits of those points, but their

---

[21] *Wilkerson v. Utah, Gateway*, No. 2:13-cv-666-DN-BCW, 2013 WL 6185040 at *2 (D. Utah  Nov. 26, 2013)(unpublished).

[22] *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007)(italics in original).

rebuttal within the context of a Motion to Dismiss is premature."[23]   The Court has found the documents to be authentic and indicate that Wells Fargo sufficiently compiled with Utah Code Ann. § 57-1-24.3(2).   Therefore, the Court GRANTS Wells Fargo's Motion to Dismiss paragraph 39 of the amended complaint.

2. **Utah Code Ann. § 57-1-24.3(6)**

Utah Code Ann. § 57-1-24.3(6) provides "Notice of a trustee's sale may not be given under Section 57-1-25 with respect to the trust property of a default trustor who has applied for foreclosure relief until after the single point of contact provides notice required by Subsection (5)(d)."   Subsection (5)(d) provides: "[t]he single point of contact shall notify the default trustor by written notice of the decision of the beneficiary or servicer regarding the foreclosure relief which the default trustor applies."

Here, the Court finds that at this stage of the litigation, Plaintiff's Amended Complaint has stated a plausible claim for relief on its face under Utah Code Ann. § 57-1-24.3(6).   The Court makes this finding based upon the arguments provided by Plaintiff in response to the Motion to Dismiss, at oral argument, and in the supplemental brief submitted to the Court.   The allegation in the Amended Complaint that the March 27, 2014 letter sent to Plaintiff by Wells Fargo where Wells Fargo's single point of contact reminded Plaintiff that the sale was still scheduled for April 3, 2014 and informed Plaintiff that there was not enough time to review his loan for mortgage assistance adequately supports Plaintiff's theory for relief.   Specifically, the March 27th letter from Ms. McElroy, the Plaintiff's single point of contact that expressly admitted that she could no longer accept papers or participate with Mr. Adams in seeking loan relief/modification, is proof that Wells Fargo's scheduling of the sale created an artificial

---

[23] Docket no. 19 at p. 5.

deadline that ruined Plaintiff's interests in pursuing mortgage relief, and persuaded his single point of contact to discontinue working with him.   Therefore, for purposes of analysis under the motion to dismiss standard, the March 27th letter from McElroy demonstrates that the notification came after the Amended Notice of Trustee Sale had been issued on March 4, 2014. This would indicate there was a violation of the Utah Statutes and Wells Fargo has not presented sufficient evidence or the March 27th letter to rebut Plaintiff's claims. Therefore, taking the allegations as true and viewing them in a light most favorable to Plaintiff, Plaintiff's claim will be allowed to proceed under the theory presented.  Accordingly, the Motion to Dismiss is denied as to Plaintiff's claim under Utah Code Ann. 57-1-24.3(6).

   3.  **Utah Code Ann. § 57-1-27(2)**

Plaintiff alleges that Wells Fargo improperly postponed the Trustee's Sale for more than a 45-day period.  Section 57-1-27(2) requires

> the person conducting the sale may, for any cause he considers expedient, postpoint the sale.  The person conducting the sale shall give notice of each postponement by public declaration, by written notice or oral postponement, at the time and place last appointed for the sale.  No other notice of the postponed sale is required, unless the postponement exceeds 45 days. In that event, the sale shall be renoticed in the same manner as the original notice of sale is required to be given.

Here, Plaintiff argues he was told the sale was postponed over what amounted to a much longer period of time than 45 days.  Adams further alleges in his Amended Complaint that he never received notice of these postponements or sales.  And even if the April 3, 2014 sale was not re-noticed, published, posted, etc. Adams did not have a new sale notice posted to his property, but rather found out through talking to Lindsay that a final sales date had been scheduled. In response, Wells Fargo argues,

> Plaintiff admits he found out about the postponements prior to the sale date.  This admission defeats Plaintiff's claim because irregularities in notice are immaterial

unless they render the borrower unable to protect his interests, chill bidding, ***or result in an inadequate notice***.  The Amended Complaint does not allege any of these according to Wells Fargo.  (emphasis added).

However, in looking at the allegation in the Amended Complaint, it appears that Plaintiff is alleging Wells Fargo's actions resulted inadequate notice.  Specifically, paragraph 41 of the Amended Complaint provides verbatim:

41.  Wells Fargo Home Mortgage postponed the scheduled sale of Adams' home pursuant to Utah Code Ann. 57-1-24.3(8) numerous times after providing the first notice required by Utah Code Ann.  57-1-24.3(5)(d), for more than a 45 day period in violation of Utah Code Ann. 57-1-27(2), ***insomuch as the proper notice procedure was not followed.***  (emphasis added).   .

Thus, the Court agrees with Plaintiff's arguments that his allegations are sufficient to survive a motion to dismiss at this very early stage in the litigation.  The Court is not persuaded by Defendants' arguments and therefore the Motion to Dismiss is denied as to any claim under 57-1-27(2).

4.  **Declaratory Judgment**

Plaintiff states that he does not seek to set aside the foreclosure sale.  Rather, Adams seeks declaratory relief in the form of an Order recognizing that the sale never took place; that it was unlawful in and of itself and is void as opposed to voidable.  According to Plaintiff, his theory is premised on the fact that the Utah statutes he has claimed were violated forbid noticing of a sale until certain conditions precedent are met.  These requirements are material to exercise the power to sell.  Therefore, according to Plaintiff, "Wells Fargo's violation of the statute is not a merely an "alleged irregularity" in the notice or process of foreclosure, but it is an act null and void, that never had any legal power at all because the conditions precedent were not met."

On the other hand, Wells Fargo argues that Plaintiff's declaratory judgment claim fails because there is no allegation of chilled bidding or inadequate sale price.  This is the conclusion

of Utah cases *RM Lifestyles, LLC v. Ellison*[24] and *Reynolds v. Woodall* command.[25]  Plaintiff

counters Wells Fargo's arguments by reviewing the procedural history of the statutes and also by

examining Utah Code Ann. Section 57-1-24.3(13) and (14) which state:

> 13)    The failure of a beneficiary or servicer to comply with a requirement
> of this section does not affect the validity of a trustee's sale of the trust
> property to:
>
>    (a)    a bona fide purchaser; or
>
>    (b)    a beneficiary of the trust deed after the trust property is
>    sold to a bona fide purchaser.
>
> (14)    Subsection (13) does not affect:
>
>    (a)    a beneficiary's or a servicer's liability under applicable
>    law; or
>
>    (b)    a default trustor's right to pursue other available
>    remedies, including money damages, against a
>    beneficiary or a servicer

In light of these statues, Plaintiff argues that a financial institution who ordered sale of

the trust property while the trustor was still working out a modification would be liable to the

trustor for damages, but also could have the sale voided, or recognized as void for lack of

authority, inasmuch as both avenues for relief are not restricted by statute.   Upon review, the

Court agrees with Plaintiff's arguments in favor of this interpretation of Utah law and in

differentiating the *RM Lifestyles* and *Reynolds* cases only for purposes of this Motion to Dismiss.

Plaintiff's arguments satisfy the Court that Plaintiff has offered sufficient factual allegations to

"raise a right to relief above the speculative level."[26]  Therefore, the Court will deny Plaintiff's

Motion to Dismiss Plaintiff's request for declaratory relief at this stage of the litigation and will

allow this theory to proceed at this early stage.  If perhaps a motion for summary judgment is

---

[24] 2011 UT App. 290, 263 F.3d 1152.

[25] 2012 UT App 206, 285 P.3d. 7.

[26] *Id*. at 555.

needed as the case develops further as to Plaintiff's arguments for declaratory relief, the Court welcomes the opportunity to examine the issues under that standard.   However, the Court believes discovery should be allowed to take place and will not dismiss Plaintiff's claims for declaratory relief at this juncture.

### c.  Negligence

The parties agree that the Plaintiff's Negligence Claim is premised and dependent upon on the viability of Plaintiff's claim for Unlawful Foreclosure and that Plaintiff has some rights in the property at issue.  Because the Court finds that Plaintiff has alleged a plausible claim for unlawful foreclosure, the Court will not dismiss Plaintiff's claim for negligence at this early stage in the litigation and will allow the claim to go forward.   Therefore, the Court agrees with Plaintiff that he "is entitled to allege the facts and duties now, and is entitled to prove his interests in the Property, and the violations of those duties by the Defendant."[27]

## CONCLUSION & ORDER

For the foregoing reasons, IT IS HEREBY ORDERED that:

(1) Wells Fargo's Motion to Dismiss[28] is GRANTED IN PART AND DENIED IN PART.

    a.  Plaintiff's Claims under Utah Code Ann. §57-1-24.3(2), paragraph 39 of the Amended Complaint are DISMISSED.

    b.   All other claims for relief remain.

(2) Plaintiff's Motion to Strike[29] is DENIED.

---

[27] Docket no. 19.

[28] Docket no. 17.

[29] Docket no. 18.

DATED this 28 March 2016.

Brooke C. Wells
United States Magistrate Judge